IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs September 26, 2007

**JERRY GRAVES v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Knox County**
**No. 79735     Richard R. Baumgartner, Judge**

_____

**No. E2007-00064-CCA-R3-PC - Filed March 5, 2008**

_____

The petitioner, Jerry Graves, was convicted by a Knox County jury of first degree felony murder and especially aggravated robbery and received sentences of life and twenty-three years. He seeks post-conviction relief, contending that his trial counsel was ineffective. On appeal, he argues that the trial court erred in denying post-conviction relief because his trial counsel was ineffective in adopting a self-defense strategy at trial. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and NORMA MCGEE OGLE, JJ., joined.

J. Liddell Kirk, Knoxville, Tennessee, for the appellant, Jerry Graves.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Assistant Attorney General; Randall E. Nichols, District Attorney General; and Willie Rena Harper, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The Tennessee Supreme Court affirmed the petitioner's convictions and summarized the facts of the case as follows:

> The defendant, Jerry B. Graves, and Takeita M. Locke were separately indicted for felony murder and especially aggravated robbery for actions arising out of events that occurred on October 17, 1998, in Knox County, Tennessee. . . .
>
> . . . .

The following evidence was introduced against Graves at his trial.

According to the testimony of Adam Faw, in the early morning hours of October 17, 1998, the defendant Graves, Takeita Locke, Christina Martin, and Faw drove around Knoxville in Faw's van while drinking alcohol and smoking marijuana laced with cocaine or crack. After a few hours, Graves directed Faw to go to an apartment in Montgomery Village so that he could rob someone. Upon arrival, Graves got out of the van carrying Faw's pistol and headed towards an apartment.

Robert Richards testified that he, Karen Verklas, and the victim, Chuck Newman, were hanging out in Verklas' apartment when Graves kicked in the door. After Graves knocked the apartment door open, he forced Newman into the kitchen, and backed him up against the stove. Richards said that he initially thought the defendant was only playing, but then he heard the defendant repeatedly saying "give me the money." Richards testified that when Newman refused, Graves wrestled Newman onto the living room couch and started beating him on the head while continuing to demand money. At the same time, Locke was also trying to pry the victim's hands open. Richards unsuccessfully tried to pull Graves off of Newman, after which he left the apartment to find help. Once outside, he found Verklas, who had fled the apartment to call 911. Richards testified that he saw Graves and Locke leave the apartment and overheard Graves tell Locke that the victim had at least $150.

Faw testified that Graves and Locke came running out of the apartment building and got back into his van. Faw noticed that Graves had blood all over his arms and jacket. When Faw asked Graves if he had gotten anything, Graves responded that he had gotten $50.

The defendant Graves testified and conceded that he had beaten Newman with a pistol and stabbed him with a knife. He claimed that Newman took crack cocaine from him and refused to pay for it. Newman eventually died from the stab wound to his chest.

Based on the foregoing evidence, the jury convicted defendant Graves of felony murder and especially aggravated robbery, and he was later sentenced to life imprisonment and twenty-three years respectively.

<u>State v. Graves</u>, 126 S.W.3d 873, 874-75 (Tenn. 2003) (footnotes omitted).

In the post-conviction hearing, the petitioner's trial counsel testified that she prepared for the petitioner's trial by visiting several times the apartments where the victim was killed and locating and interviewing witnesses. She said she reviewed photographs of the crime scene. She said she met with the petitioner several times before the trial and also had an investigator working on the case who also met with her and the petitioner. She said that she discussed with the petitioner the trial strategy during these meetings and that the petitioner was very easy to work with. She said the trial strategy developed as a result of the account of events that the petitioner relayed to her.

She testified that she was aware that in order to prove the petitioner committed felony murder, the state had to prove the underlying felony of robbery. She said that there was no question at the trial that the petitioner killed the victim and that the petitioner always insisted to her that he, and not Takeita Locke, stabbed the victim. She recalled that the evidence at trial was that the petitioner was carrying a firearm and that the victim was unarmed until, according to the petitioner's testimony, the victim took the petitioner's pistol. She recalled that there was also evidence that the victim had a head injury caused by blunt force trauma from a gun. The petitioner's testimony was that he and the victim struggled after the victim refused to pay for crack cocaine and that the petitioner hit the victim on the head with his pistol. The petitioner also testified that he stabbed the victim in self-defense after the victim grabbed the pistol from him. Trial counsel acknowledged that this was a "difficult scenario" by which to prove self-defense but that she had no choice but to argue self-defense because that was the petitioner's account and how he testified. She acknowledged that if the petitioner had been at the victim's house for a drug deal and not to rob the victim, the petitioner could have been convicted of second degree murder instead of first degree murder and received a lighter sentence. She said she argued at the trial that the evidence did not prove a robbery occurred. However, she said she did not choose to pursue that defense only, at the exclusion of a self-defense argument, because she had to base her defense on what the petitioner told her.

Trial counsel testified that she told the petitioner that it was his decision whether he would testify at trial. However, she said she did advise the petitioner that he was the only person who could give his account of what occurred. She said there was nothing to lose by having the petitioner testify. She said that she met frequently with the petitioner and discussed his testimony and that she had prepared him to testify, although she also told him it was his ultimate decision whether he would testify. She said she told the petitioner that it was a difficult case to defend, especially because the state had four eyewitnesses. She said, however, that they had no choice but to go to trial because the petitioner was never offered a plea agreement.

Trial counsel testified that she represented the petitioner on direct appeal. She said she raised a number of issues in the appeal but did not argue that the evidence was insufficient to support his convictions. She said she did not argue this because the evidence was sufficient; the state had multiple eyewitnesses, including witnesses who testified that the petitioner planned a robbery of the victim.

-3-

The trial court denied the petitioner post-conviction relief, finding that he did not prove grounds for relief by clear and convincing evidence. The court found that the petitioner's trial counsel was effective and, in particular, that trial counsel was not ineffective in her trial strategy. In this appeal, the petitioner contends that the trial court erred in denying him post-conviction relief, and he argues that his trial counsel was ineffective in pursing a self-defense trial strategy when the evidence at trial made such a defense incredible. The petitioner argues that, instead, the defense should have focused solely on whether a robbery occurred. The state urges us to affirm the trial court's denial of post-conviction relief because there is no evidence that trial counsel was ineffective.

The burden in a post-conviction proceeding is on the petitioner to prove his grounds for relief by clear and convincing evidence. T.C.A. § 40-30-110(f). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456-57 (Tenn. 2001). Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457. Post-conviction relief may only be given if a conviction or sentence is void or voidable because of a violation of a constitutional right. T.C.A. § 40-30-103.

Under the Sixth Amendment to the United States Constitution, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72, 113 S. Ct. 838, 842-44 (1993). A petitioner will only prevail on a claim of ineffective assistance of counsel after satisfying both prongs of the Strickland test. See Henley v. State, 960 S.W.2d 572, 580 (Tenn. 1997). The performance prong requires a petitioner raising a claim of ineffectiveness to show that the counsel's representation fell below an objective standard of reasonableness or "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690, 104 S. Ct. at 2066. The prejudice prong requires a petitioner to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S. Ct. at 2068. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., 104 S. Ct. at 2068. Failure to satisfy either prong results in the denial of relief. Id. at 697, 104 S. Ct. at 2069.

In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court decided that attorneys should be held to the general standard of whether the services rendered were within the range of competence demanded of attorneys in criminal cases. Further, the court stated that the range of competence was to be measured by the duties and criteria set forth in Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974), and United States v. DeCoster, 487 F.2d 1197, 1202-04 (D.C. Cir. 1973). Also, in reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689, 104 S. Ct. at 2065. "Thus, the fact that a particular strategy or tactic failed or even hurt the defense does not, alone, support a claim of

-4-

ineffective assistance." <u>Cooper v. State</u>, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).  Deference is made to trial strategy or tactical choices if they are informed ones based upon adequate preparation.  <u>Hellard v. State</u>, 629 S.W.2d 4, 9 (Tenn. 1982); <u>see</u> <u>DeCoster</u>, 487 F.2d at 1201.

We conclude that the petitioner has not demonstrated that his trial counsel was ineffective. The petitioner complains that his trial counsel argued and brought up evidence of self-defense at the trial.  However, as trial counsel testified, the petitioner's own account of what occurred was that he stabbed the victim in self-defense.  Moreover, trial counsel raised evidence and argument regarding a drug transaction between the petitioner and victim to refute evidence that the petitioner killed the victim during the course of a robbery.  The evidence shows that trial counsel adequately prepared for trial, which included meeting with the petitioner many times, interviewing witnesses, and examining the crime scene.  We give deference to the trial strategy that counsel used, regardless of whether a different strategy theoretically could have led to a different result.  We conclude that trial counsel's performance was not deficient and that the petitioner did not receive the ineffective assistance of counsel.

Based on the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE